James E. Bistor et al., Appellees, v. Joseph B. McDonough, Appellant.

Gen. No. 35,333.

Opinion filed July 22, 1931. Rehearing denied August 3, 1931.

JOHN A. SWANSON, State's Attorney, and JOHN E. PEDDERSON and LOUIS H. GEIMAN, Assistant State's Attorneys, for appellant; THOMAS D. NASH and HAYDEN N. BELL, of counsel.

WATKINS, TEN HOOR & GILBERT, for appellees.

MR. JUSTICE MCSURELY delivered the opinion of the court.

Complainants by their bill in equity ask that certain assessments and taxes for the year 1929 against real estate owned by them be declared void and that the collection of the same be perpetually enjoined. De-

fendants filed a demurrer. Upon motion, an interlocutory order was entered, enjoining defendant, county treasurer, from advertising the property named in the bill as delinquent and from pursuing any other proceedings with reference to taxes on the real estate. This appeal seeks the reversal of this interlocutory order.

Complainants first assert that this court has no jurisdiction of this appeal as a question of revenue is involved. While there are decisions supporting this view (*Patterson v. Denton,* 201 Ill. App. 382; *Birch v. Denton,* 201 Ill. App. 386), we are disposed to follow the later cases of *People v. Sears,* 230 Ill. App. 484, and *Klever Shampay Karpet Kleaners, Inc. v. City of Chicago,* 238 Ill. App. 291, which construe section 123 of the Practice Act, Cahill's St. ch. 110, ¶ 122, as including all cases.

In the bill complainants describe themselves as taxpayers of Cook county, Illinois, who are filing the bill ''on behalf of themselves and all other taxpayers in Cook County, Illinois, similarly situated, who are willing to join in this suit and share its expense.'' A large number of persons are named in the bill as complainants. As stated by attorneys for the complainants in their brief, the essence of the bill is that the board of assessors and the board of review of Cook county, together with the State tax commission, have entered into a fraudulent scheme by which personal property has been systematically and intentionally omitted from assessment or grossly underassessed for the purpose of throwing an unfair portion of the tax burden on real property; that personal property in Cook county has been assessed at about $700,000,000, while, in fact, the real value of personal property is $30,000,000,000; that real estate, on the other hand, has a value of $10,000,000,000; that personal property should bear 75 per cent of the tax burden and real

estate 25 per cent, but that under the 1929 assessment of Cook county property, 83½ per cent of the tax burden is borne by real estate and only 16½ per cent by personal property; that by Article 9, section 1, of the Constitution of Illinois, it is provided that a uniform assessment must be made so that the tax burden will be borne by all property in proportion to its value.

The principle of uniformity of taxation in the assessment of taxes is firmly established and that principle must be fully carried out as far as practicable in respect to all property. *Chicago & North Western Ry. Co. v. Board of Supervisors,* 44 Ill. 240; *People v. Illinois Cent. R. Co.,* 273 Ill. 220; *People v. Chicago, Burlington & Quincy R. Co.,* 300 Ill. 399; *People v. Orvis,* 301 Ill. 350. In this latter case the court said: "This principle lies at the foundation of all taxing power, for the reason that one man should not be compelled to pay a greater proportion of taxes according to the value of his property than another."

Complainants cite a large number of cases, mostly from federal courts, holding that, if property is arbitrarily assessed fraudulently at too high a valuation, a court of equity will interfere to protect the taxpayer in his constitutional right. This has also been frequently held in this State. The cases, however, which justify the interposition of a court of equity are cases in which a complaining taxpayer is asserting that his particular kind of property has been fraudulently overvalued as compared with other property of the same kind. If A owns a lot and it is assessed at double the value of another lot identical in size, location, etc., upon a proper bill equity will restrain the collection of taxes based upon this unfair and inequitable valuation.

The case before us, however, is of another sort. Here, certain real estate owners are asking that they be relieved from payment of taxes on their particular

real estate, while all other real estate which is valued upon the same basis must pay its taxes. The successful result of complainants' bill would give them special immunity from any proceedings to collect taxes on their realty, leaving other taxpayers in the same class of real estate owners to pay the taxes. Complainants' bill, in essence, seeks to establish an inequitable exception in their favor, thus violating the fundamental principle of uniformity of taxes.

A case involving substantially this situation is *First Nat. Bank of Urbana v. Holmes,* 246 Ill. 362, where the complainant asserted (reversing the situation in the instant bill) that its real estate was valued at 43 per cent of its actual value and its personal property at 75 per cent of such value. The opinion states the general rule concerning uniformity of taxation, together with some pertinent observations as to the necessity of honest judgment on the part of persons elected or appointed to tax assessing bodies. The court holds that where a valuation of a particular piece of property is so unreasonable as to show that the officer must have known that it was wrong, that such valuation is a fraud, but that the whole matter of assessment is committed to the board of assessors and the board of review upon the controlling principle that every person and corporation shall pay a tax in proportion to his or its property, "and a court of equity has no jurisdiction to enjoin the collection of a tax unless it is unauthorized by law or is levied on exempt property or the property is fraudulently valued too high." The opinion notes that the officer who made the assessment knowingly and intentionally discriminated between different classes of property "by valuing one class at 43 per cent and another at 75 per cent of the real value." The trial court required a reduction of the valuation fixed by the board, but the Supreme Court finds that the effect of this was

to permit complainant to pay less taxes in proportion to the value of its shares of stock than all other taxpayers in the township owning the same kind of property; that this was a wrong to such other taxpayers. The court held that a court of equity cannot intervene on behalf of a taxpayer upon the ground that the property of others has been valued too low; that while one class of property should not be assessed on a lower basis than another class, the court could not give the relief asked for by complainant's bill "without doing an injustice to all other owners of similar property who were assessed on substantially the same basis of valuation."

This case is decisive of the question before us. It, in substance, holds that, where the discrimination is in favor of a class of property, a taxpayer owning property in another class can resort to mandamus to compel a proper assessment of the favored class, and not to equity. When the discrimination is in the same class, the injured party is entitled to a remedy in equity for relief against the fraudulent excess. Such a case is *People's Gas Light & Coke Co. v. Stuckart,* 286 Ill. 164, where the complaining taxpayer was discriminated against with reference to certain property as compared to other property of the same class. So also *People v. Chicago, Burlington & Quincy R. Co.,* 300 Ill. 399. In the present case complainants do not complain of any discrimination in the same class of property. Complainants' brief does not dispute the pertinency of the decision in *First Nat. Bank of Urbana v. Holmes,* 246 Ill. 362. We read *People v. Webb,* 256 Ill. 364, as permitting mandamus proceedings where the discrimination is in favor of one class of property as against property of another class.

As to the allegation that certain personal property was omitted from assessment, it should be noted that such an omission would not affect the validity of

taxes on other property. To hold otherwise would give the assessing officers the power to defeat the collection of taxes by such omissions. ''Such officers may make themselves amenable to the law, for misconduct in office, but cannot thus stop the wheels of government.'' *Dunham v. City of Chicago,* 55 Ill. 357. See also *Merritt v. Farris,* 22 Ill. 303; *Schofield v. Watkins,* 22 Ill. 66; *Spencer & Gardner v. People,* 68 Ill. 510; *People ex rel. Gerstkemper v. Lots in Ashley,* 122 Ill. 297.

For the reasons indicated we hold that the interlocutory injunction should not have been granted and it is therefore reversed.

*Reversed.*

O'CONNOR, P. J., and MATCHETT, J., concur.